IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 10, 2001 Session

## CHARLES DOSS, ET AL. v. GRACE T. SAWYERS

**Appeal from the Chancery Court for Rhea County**
**No. 7227   Jeffrey F. Stewart, Chancellor**

**FILED JULY 20, 2001**

**No. E2000-01745-COA-R3-CV**

This is a suit wherein the Plaintiffs seek to remove a cloud in the form of a purchase agreement from the title of property owned by the Plaintiffs.  The Trial Court found that the purchase agreement was invalid because of lack of  mental capacity of the then owner, Charles Doss, to sign the agreement, and awarded a judgment in the amount of $6900 to the Defendant for payments made under the agreement.  We reverse the judgment of the Court relative to the invalidity of the purchase agreement and, in accordance with the prayer of the counter-complaint, order that the property be conveyed by the Clerk and Master to the Defendant subject to payment of the balance owed on the property as determined upon remand.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

J. Arnold Fitzgerald, Dayton, Tennessee, for the Appellant, Grace T. Sawyers

Steven D. Brown, Dayton, Tennessee, for the Appellee, Robert Doss

**OPINION**

Charles Doss[1] and his wife Vallie Doss sued Grace T. Sawyers seeking to remove a cloud from their title to some 29 acres[2] of real estate located in Roane County. The cloud alleged is a purchase agreement entered into on February 5, 1981, between the Dosses as sellers and E. Paxton Sawyers as purchaser. Later, Mr. Sawyers' interest in the purchase agreement was assigned to his wife, Grace T. Sawyers, at the time of their divorce.

The Trial Court found that Charles Doss lacked mental capacity to execute the purchase agreement, that "the terms of the agreement were not complied with and the Parol Evidence Rule would prevent any oral modification of the agreement." He then "based upon the stipulation of counsel for Robert Doss that he will not seek contribution from the other heirs of Charles Doss" awarded a judgment against Robert Doss in the amount of $6900 for payments made under the purchase agreement notwithstanding that the record discloses cashed checks payable to Charles Doss totaling $10,500.

Ms. Sawyers appeals insisting the Court was in error in not ordering the Plaintiff to deliver a deed to Ms. Sawyers for all property described in the purchase agreement or that the Clerk and Master be authorized to deliver such a deed. In the alternative Ms. Sawyers insists that she should be repaid all monies previously paid on the purchase agreement, plus pre-judgment interest from the date of each payment.

As pertinent to this appeal the purchase agreement provided the following:

> That the purchase price is $650.00 Dollars per acre, a portion of which has been paid previous to the date of this contract and the balance is due when the deed is delivered to the Purchaser, no longer than 90 days from date, unless a further agreement is reached between the parties.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the Trial Court's factual findings are correct. Tenn. R. App. P. 13(d). We must honor that presumption unless we find that the evidence preponderates against the Trial Court's factual findings. Union Carbide Corp. v. Huddleston, 854 S.W.2d 87 (Tenn. 1993). The Trial Court's conclusions of law, however, are not accorded the same deference. Campbell v. Florida Steel Corp., 919 S.W.2d 26 (Tenn. 1996).

---

[1] Charles Doss died during the pendency of the suit and his sons, Edward C. and Robert Doss, were permitted to intervene as representatives of Charles' heirs pursuant to T.C.A. 20-5-102.

[2] The complaint alleges that the property described in a deed which is made Exhibit A thereto from Gus Doss to Charles Doss, conveying 15.14 acres is the property in dispute. However, at trial a deed conveying 30 acres purporting to be the property in question from Gus Doss to Charles Doss and Vallie Walker, who we assume later married Charles Doss, was introduced. This deed excepts a portion of the property which, although described, does not state the acreage excepted.

The proof as to Charles Doss' mental capacity, which we quote in full, is sparse:

### David Doss (Son)

Q      Was your dad in the hospital at the time he signed this?

A      Sure was.

Q      What was he in the hospital for?

A      Emphysema.  That's all I know.

Q      Do you remember his condition back in February of 1981 when he signed this agreement?

A      He was sitting there talking to Paxton Sawyers.  He wasn't talking to me, but he was sitting up there talking to Paxton Sawyers just like – I knowed he was sick but I didn't know anything else.

Q      You didn't know anything else about him except that he was sick?

A      I knowed he was sick.

### Charlotte Akins (Daughter)

Q      What kind of condition was he in on February of 1981 when he was there at Rhea County Hospital?

A      He was in very bad shape.  The doctors had told us he didn't have but maybe –

MR. FITZGERALD: Object to that, Your Honor.

THE COURT: Well, I sustain.  You can't tell what the doctors told you but you can tell your personal observations.

BY MR. BROWN:

Q   What did you observe about your father there on that day on February 5th of 1981?

A    Well, when they came in from signing the papers, after they left he started crying and he wanted to know why they made him do it.  I said, Daddy, I thought that's what you wanted to do.  He said, no, I thought I had to.

.  .  .  .

Q    What is it that your father said?

A    He told me when they went out of the room – when David and Paxton went out of the room Daddy started crying.  He said, why did they make me sign that.  I said, Daddy, I thought that is what is [sic] you wanted to do.  He said, no, it wasn't, I thought I had to.

Q    Did he indicate to you why he thought he had to sign it?

A    Just the fact that he was in such bad shape, I reckon, is all I know.  He thought he didn't have any choice.

Q    Did he indicate to you that this was some sort of agreement to bury him?

A    Yes, he did.

There are, however, several things that militate against the Trial Court's finding as to mental capacity.  First, we note that both a son and a daughter of Mr. Doss were present in the hospital when the purchase agreement was signed and would think it highly unlikely that they would have remained silent and signed their names as witnesses to the agreement had their father's mental capacity been in question.  Moreover, prior to the execution of the purchase agreement on February 5, 1981, Mr. Doss had received 16 checks totaling $3600, beginning January 14, 1980, and ending January 24, 1981.  Thereafter, 40 payments were made from February 7, 1981, to January 29, 1985,[3] in the amount of $6900.  Thirty-six of the 56 checks paid to Mr. Doss stated on their face: "For payment on property" or words to that effect.  There is no contention that Mr. Doss had any mental impairment during the latter period of time.  Finally, we note, and perhaps most importantly, the agreement as drafted called for the payment of $600 per acre.  However, before signing, Mr. Doss himself objected that the agreement was $650 per acre and the instrument was altered to reflect that amount.  (See appendix.)

---

[3]    It appears from the record that Mr. Doss, who had from time to time requested payment on the purchase price, requested any remainder owed to be applied on his funeral bill which, presumably, Mr. Sawyers, who owned a half interest in a mortuary, would be due.

We thus conclude that the evidence preponderates against the Trial Court's finding that Mr. Doss lacked mental capacity to enter into the agreement.

The Court's finding a breach of the terms of the agreement was apparently based upon the fact that payment was not made for the property within 90 days of the date of the agreement. However, the payment was due–in the words of the agreement--"when the deed is delivered to the purchaser, no longer than 90 days from date unless a further agreement is reached between the parties." The deed was never delivered, which did not trigger the duty to pay the balance owed. Additionally, it is clear that the parties tacitly reached a further agreement in that periodic payments continued to be made by Mr. Sawyers and accepted by Mr. Doss. Finally, as to the Parol Evidence Rule, we do not believe consideration of the checks, 36 of which, as already pointed out, were endorsed by Mr. Doss and contained the notation "payment on property" violates the Rule.

In view of the foregoing, we conclude that Ms. Sawyers should be entitled to enforce the agreement.

We accordingly direct that upon a determination by the Trial Court of the balance owed on the purchase agreement and payment of that amount by Ms. Sawyers, the Clerk and Master shall execute a deed conveying the property to her.

We do believe it appropriate in view of the fact that there is proof Robert erected a mobile home on the property, that the Chancellor, should the parties not be able to agree, conduct a hearing to determine an equitable adjustment as to the balance owed.

For the foregoing reasons the judgment of the Trial Court is reversed and the cause remanded for the purposes hereinbefore set out and collection of costs below which are, as are costs of appeal, adjudged against Vallie Doss, Robert Doss and Edward Doss.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE